UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID KUEHN,

          Plaintiff,

      v.

DR. AMELIA HAYGOOD, CAROL
ROSENBERGER, AND DELOS
INTERNATIONAL, INC.,

          Defendants.

CIVIL ACTION No. 05-10574 (RGS)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE

### INTRODUCTION

Plaintiff David Kuehn filed this diversity action in the wrong court. His complaint alleges claims against two California residents, Dr. Amelia Haygood and Carol Rosenberger, and a California corporation, Delos International, Inc. ("Delos"), based on a contract formed in California, or at least not in Massachusetts. Mr. Kuehn filed this action in a court located in a state that has nothing to do with this action other than the fact that Mr. Kuehn happens to live in Massachusetts.

Not surprisingly, the law protects defendants such as Dr. Haygood, Ms. Rosenberger, and Delos from Mr. Kuehn's efforts. This Court lacks personal jurisdiction over the defendants. None of the defendants transacts business in Massachusetts sufficient to establish personal jurisdiction under the Massachusetts long arm statute. Nor would exercising personal jurisdiction over these defendants comport with constitutional constraints. Moreover, the District of Massachusetts is an improper venue. Dr. Haygood and Ms. Rosenberger are residents

of California.  Massachusetts does not have personal jurisdiction over Delos.  A substantial part of the events or omissions giving rise to Mr. Kuehn's claims did not occur in Massachusetts.

As such, this case must either be dismissed or transferred to the United States District Court for the Central District of California.

## FACTS

Delos is an independent classical music recording company based in California.  (Compl. ¶ 5; Affidavit of Carol Rosenberger ("Rosenberger Aff.") ¶¶ 1, 2.)  Delos is a California corporation whose sole office is in Hollywood, California.  (Compl. ¶ 5; Rosenberger Aff. ¶ 2.) It has no offices or employees in Massachusetts.  (Rosenberger Aff. ¶ 8.)  It neither owns nor rents property in Massachusetts.  (Rosenberger Aff. ¶ 7.)  Delos has no bank accounts in Massachusetts.  (Rosenberger Aff. ¶ 6.)

Delos does not sell or distribute its recordings in Massachusetts.  (Rosenberger Aff. ¶ 9.) Delos sells its recordings to the central offices of various retail stores or to one-stop distributors who then sell or distribute Delos recordings in Massachusetts.  (Id.)  None of these central offices or distributors is in Massachusetts.  (Id.)  Delos's sales to Tower Records and Virgin, for instance, are handled through Tower Records' and Virgin's main California offices.  (Id.)  All invoices to and payments from Tower Records and Virgin are also handled from these California offices.  (Id.)  Likewise, Delos sells its recordings to Alliance, a one-stop distributor in Florida, who then sells the recordings to national retail chains as Barnes & Noble.  (Id.)

Dr. Haygood and Ms. Rosenberger reside in Santa Monica, California.  (Compl. ¶¶ 3-4; Rosenberger Aff. ¶ 3; Affidavit of Amelia Stone Haygood ("Haygood Aff.") ¶ 2.)  Dr. Haygood is Delos's President and Ms. Rosenberger is its Senior Vice President, Artists and Repertoire. (Rosenberger Aff. ¶ 1; Haygood Aff. ¶ 1.)  Neither Dr. Haygood nor Ms. Rosenberger has ever lived in Massachusetts.  (Rosenberger Aff. ¶ 4; Haygood Aff. ¶ 3.)  Although they have traveled

to Massachusetts, they have only done so a few times. (Rosenberger Aff. ¶ 5; Haygood Aff. ¶ 4.)
Like Delos, Dr. Haygood and Ms. Rosenberger do not have bank accounts in Massachusetts, and
do not own or rent any property in Massachusetts. (Rosenberger Aff. ¶¶ 6-7; Haygood Aff. ¶¶ 5-
6.)

Dr. Haygood and Ms. Rosenberger first met Mr. Kuehn, a Massachusetts resident, in
New York City on July 26, 2000. (Compl. ¶ 2; Rosenberger Aff. ¶ 10.) Mr. Kuehn had formerly
worked for BMG Classics, another classical music recording company, in New York City.
(Rosenberger Aff. ¶ 10.) At this meeting, Dr. Haygood, Ms. Rosenberger, and Mr. Kuehn
discussed the possibility of Mr. Kuehn working with Delos as a consultant to develop new
marketing and alternative marketing projects. (Id.) They also discussed the possibility of Mr.
Kuehn performing similar work for the Moscow Chamber Orchestra Cultural Exchange
Foundation ("Foundation"), a non-profit corporation based in California. (Id.) Mr. Kuehn
informed Dr. Haygood and Ms. Rosenberger that he had moved to Massachusetts since leaving
BMG and was no longer living in New York. (Id.) However, to allay their concern in having a
consultant working from Massachusetts, Mr. Kuehn assured them that he traveled to New York
frequently and had many New York contacts. (Id.)

Dr. Haygood and Ms. Rosenberger made it clear to Mr. Kuehn, however, that Delos had
no funds with which to pay him. (Id.) They further made it clear to Mr. Kuehn that Delos would
be unable to pay him until either he was able to generate enough revenue for Delos or Delos
received a long-awaited cash infusion that would enable Delos to pay him a monthly retainer.
(Id.) In the meantime, Dr. Haygood and Ms. Rosenberger offered to pay him the retainer out of
their personal funds. (Id.) Mr. Kuehn agreed. (Id.)

On December 26, 2000, Mr. Kuehn sent Delos an email proposing the terms of his compensation. (Rosenberger Aff. ¶ 11.) Delos accepted this proposal in California. (Id.)

Mr. Kuehn performed some of his work from his home in Massachusetts. (Compl. ¶ 13; Rosenberger Aff. ¶ 15.) Nevertheless, his Massachusetts residence was not the reason why Delos retained his services. (See Rosenberger Aff. ¶ 10.) As far as they were concerned, he could have performed his services anywhere. (See Rosenberger Aff. ¶¶ 12-16, 18-19.) Indeed, the point of retaining Mr. Kuehn was not to advance Delos's interests in Massachusetts, but to generate business opportunities for Delos outside of Massachusetts. (See Rosenberger Aff. ¶¶ 12-16, 18-19.) The only reason Mr. Kuehn worked from Massachusetts was that he chose to.

None of the services he provided necessitated that he work from Massachusetts. The work that he engaged in from his Massachusetts home was with people and entities outside of Massachusetts. (See Compl. ¶ 13.) His work involved providing promotional copies of new Delos releases to classical music radio stations located in states such as Vermont, Virginia, and California. (Rosenberger Aff. ¶ 12.) But Mr. Kuehn did not provide these recordings to the radio stations himself. (Id.) Rather, he would contact Delos. (Id.) Delos would then provide the recordings directly to the radio stations. (Id.) He also provided press releases and recordings to various music publications such as Classical CD Review in Maryland, Schwann in Virginia, Opera News in New York, and the San Francisco Examiner in California. (Rosenberger Aff. ¶ 13.) He forwarded internet links and online articles, such as reviews, to Delos's office. (Rosenberger Aff. ¶ 14.)

Indeed, no one with whom he interacted on behalf of Delos would have known that he worked out his Massachusetts home unless he told him or her. Delos provided Mr. Kuehn with a toll free number so that he could make long distance calls as though he were at the Delos office

in California. (Rosenberger Aff. ¶ 15.) In addition, Delos provided Mr. Kuehn with a Delos extension so that incoming callers could call Delos's office in California and be transferred to his extension. (Id.) Callers could also call his extension directly. (Id.)

No Delos employees visited Mr. Kuehn in Massachusetts. (Rosenberger Aff. ¶ 18.) Dr. Haygood did not visit Mr. Kuehn in Massachusetts, nor did Ms. Rosenberger. (Rosenberger Aff. ¶ 17; Haygood Aff. ¶ 7.) Mr. Kuehn communicated with Dr. Haygood, Ms. Rosenberger, and Delos by telephone and email when he was in Massachusetts. (Compl. ¶¶ 13-14; Rosenberger Aff. ¶ 16; Haygood Aff. ¶ 8.) He would meet face-to-face with Dr. Haygood, Ms. Rosenberger, and Delos employees in states other than Massachusetts, primarily California. (Rosenberger Aff. ¶ 18; Haygood Aff. ¶ 7.) Thus, he met with Delos employees in California at Delos's office, New York, Arizona, Texas, and even Southern France. (Rosenberger Aff. ¶ 18.)

Mr. Kuehn's efforts on behalf of Delos and the Foundation failed to generate any revenues for Delos or development activity for the Foundation. (Rosenberger Aff. ¶ 21.) The cash infusion never arrived. (Rosenberger Aff. ¶ 22.) In the meantime, Mr. Kuehn was paid from February 3, 2001 until October 28, 2001 by checks mailed to him in Massachusetts from Dr. Haygood, Ms. Rosenberger, or the Foundation in California. (Rosenberger Aff. ¶ 20.) Dr. Haygood and Ms. Rosenberger's resources were soon exhausted, and they could no longer send Mr. Kuehn any money for his efforts. (Rosenberger Aff. ¶ 23.) Likewise, Mr. Kuehn's failure to generate any development activity for the Foundation led to the Foundation's limited resources being used up. (Id.) Mr. Kuehn was aware that there was no money to pay his retainer. (Compl. ¶ 17.)

Mr. Kuehn received his last retainer check around November 1, 2001. (Compl. ¶ 17; Rosenberger Aff. ¶ 23.) Although Mr. Kuehn knew that neither Dr. Haygood, Ms. Rosenberger,

Delos, nor the Foundation would be able to pay him in the future, he nevertheless continued his attempt to put his "skills" to use for Delos for another year. (Compl. ¶ 18.) Mr. Kuehn made the decision to continue working himself.

After not receiving payment for the amount he felt was due, Mr. Kuehn filed suit in this Court. His complaint alleges claims against Dr. Haygood and Ms. Rosenberger for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and unfair trade practices under Mass. Gen. Laws ch. 93A (Count III). He further alleges claims against Dr. Haygood, Ms. Rosenberger, and Delos for quantum meruit (Count IV).

### ARGUMENT

Defendants are entitled to dismissal because (1) they are not subject to personal jurisdiction in Massachusetts; and (2) Massachusetts is an improper venue. As an alternative to dismissal for improper venue, this case should be transferred to the Central District of California.

## I.    This Court Lacks Personal Jurisdiction Over The Defendants.

None of the defendants is subject to personal jurisdiction in Massachusetts. "In a diversity case, personal jurisdiction over a nonresident defendant is constrained by both the long-arm statute of the forum state and the Due Process Clause of the Fourteenth Amendment." Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997). The plaintiff bears the burden of proving facts sufficient to support an exercise of personal jurisdiction. Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Mr. Kuehn cannot carry this burden.

### A.    Defendants Are Not Subject To The Long Arm Statute.

Mr. Kuehn cannot establish that any of the defendants are subject to Massachusetts' long-arm statute. The Massachusetts long-arm statute permits the exercise of personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law or equity arising

from the person's … transacting any business in this commonwealth." Mass. Gen. Laws ch.

223A, § 3(a). "The 'transacting business' test under section 3(a) is designed to identify

deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party."

Lyle Richards, 132 F.3d at 112. Dr. Haygood, Ms. Rosenberger, and Delos have not "transacted

business" in Massachusetts within the meaning of the statute.

That Delos may have entered into a contract with Mr. Kuehn and mailed checks to him in

Massachusetts is insufficient to establish personal jurisdiction. In Telco Communications. v.

New Jersey State Firemen's Mutual Benevolent Assoc., 41 Mass. App. Ct. 225 (1996), a

Massachusetts company specializing in fund-raising activities entered into a contract to provide

services to a New Jersey non-profit corporation. The Massachusetts company later sued the New

Jersey non-profit corporation in Massachusetts for breach of contract. The Appeals Court held

that personal jurisdiction was improper because, without more, simply entering into a contract

with an entity in Massachusetts is "hardly enough to satisfy § 3(a)." Likewise, in Nichols

Associates, Inc. v. Starr, 4 Mass. App. Ct. 91 (1976), a Massachusetts engineering firm sued a

Connecticut resident in Massachusetts to recover the value of services rendered. The Appeals

Court held that the defendant was not subject to personal jurisdiction despite the fact that the he

had entered into a contract with, and made at least one payment to, the Massachusetts firm.

Here, as in Telco and Nichols, Massachusetts elements are "present but minor." Telco, 41 Mass.

App. Ct. at 232; see also "Automatic" Sprinkler Corp. of America v. Seneca Foods Corp., 361

Mass. 441, 444-45 (1972) (defendant not subject to personal jurisdiction where defendant's

contact with Massachusetts consisted of signing a contract and making payments through the

mail).

Moreover, the contract was not formed in Massachusetts. The parties negotiated the terms of the contract in a meeting in New York. Mr. Kuehn subsequently submitted an offer to the defendants in California regarding compensation. The defendants accepted Mr. Kuehn's offer in California. As such, the situs of the contract's formation does not support the exercise of personal jurisdiction over the defendants. See, e.g., Nichols, 4 Mass. App. Ct. at 94-95 (defendant not subject to personal jurisdiction in Massachusetts where contract was formed in Connecticut).

Likewise, none of the defendants visited Mr. Kuehn in Massachusetts. Nor have Delos employees traveled to Massachusetts to confer with Mr. Kuehn on Delos's behalf. Rather, all of his face-to-face meetings with Dr. Haygood, Ms. Rosenberger, and Delos employees were in states other than Massachusetts, particularly California. Nor do the phone calls and emails between Dr. Haygood, Ms. Rosenberger, or Delos employees suffice to subject the defendants to personal jurisdiction in Massachusetts. See id. at 95 (defendant not subject to personal jurisdiction in Massachusetts despite fact that defendant occasionally sent an employee to plaintiff's Massachusetts office and plaintiff and defendant communicated via telephone).

There was no requirement that Mr. Kuehn's performance under the agreement take place in Massachusetts. In addition, most of the services Mr. Kuehn provided were rendered outside Massachusetts. He had Delos ship promotional recordings to radio stations outside of Massachusetts. He forwarded internet links and online articles to Delos. Mr. Kuehn could have provided these services from anywhere. Moreover, Delos provided Mr. Kuehn the toll free number and Delos extension so it would be as if he were working at Delos's office in Hollywood rather than from his home on Cape Cod.

Mr. Kuehn provided services to Delos in Massachusetts because he chose to do so. The contract had nothing to do with Massachusetts. Indeed, Mr. Kuehn marshaled his New York connections to Dr. Haygood and Ms. Rosenberger at the New York meeting because of their concerns about his Massachusetts residence. This is insufficient to establish personal jurisdiction. See, e.g., Lyle Richards, 132 F.3d at 113 (defendant's contacts with Massachusetts were insufficient to support personal jurisdiction where "most performance required from [plaintiff] under the Agreement was to be rendered outside Massachusetts); Massachusetts Sch. of Law at Andover, 142 F.3d at 34 ("[I]f a contract claim, our stereotypical inquiry tends to ask whether the defendant's forum-based activities are 'instrumental in the formation of the contract.'") (quoting Hahn v. Vermont Law School, 698 F.2d 48, 51 (1st Cir. 1983)); Nichols, 4 Mass. App. Ct. at 96 (defendant's contacts with Massachusetts were insufficient to support personal jurisdiction where the nonresident defendant's "contact was limited to the … acceptance of services which the plaintiff simply chose to perform in Massachusetts").

Since the defendants are not subject to personal jurisdiction in Massachusetts for Mr. Kuehn's breach of contract claim, a fortiori, they are not subject to personal jurisdiction for either his claim for breach of the implied covenant of good faith and fair dealing or for his quantum meruit claim. The implied covenant of good faith and fair dealing is an implied contractual term. Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977) ("[I]in every contract there exists an implied covenant of good faith and fair dealing.") (quoting Uproar Co. v. National Broadcasting Co., 81 F.2d 373, 377 (1st Cir. 1936)). Similarly, quantum meruit is contractual in nature, based upon an implied promise to pay for a benefit conferred. See Day v. Caton, 119 Mass. 513, 515 ("If a party … voluntarily accepts and avails himself of valuable services rendered for his benefit, when he has the option whether to accept or reject them … a

promise to pay for them may be inferred."). Thus, if a defendant is not subject to personal

jurisdiction for breach of contract, that defendant cannot be subject to personal jurisdiction for

breach of the implied covenant of good faith and fair dealing or quantum meruit.

As with his other claims, Mr. Kuehn's Chapter 93A claim does not support personal

jurisdiction. Massachusetts courts have not determined whether a Chapter 93A claim is a tort

claim or a contract claim such that personal jurisdiction may be asserted for "causing tortious

injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(c); see

Lyle Richards, 132 F.3d at 114 (noting that it is not clear whether a Chapter 93A claim

constitutes a "tortious injury" within the meaning of the Massachusetts long arm statute).

Nevertheless, it is clear that Mr. Kuehn's claim under Chapter 93A is nothing more than a recast

version of his breach of contract claim.

Chapter 93A, § 11, provides that

any person who engages in the conduct of any trade or commerce and who suffers
any loss of money or property, real or personal, as a result of the use or
employment by another person who engages in any trade or commerce of an
unfair method of competition or an unfair or deceptive act or practice ... may ...
bring an action in the superior court[.]

Thus, in order to state a Chapter 93A claim, Mr. Kuehn was required to demonstrate a loss of

money or property.

In Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d at 114-15, the First Circuit held

that a breach of contract claim masquerading as a Chapter 93A claim does not constitute a

"tortious injury" under the Massachusetts long arm statute. In that case, the plaintiff's Chapter

93A claim claimed no injury apart from that alleged in his breach of contract claim. Since "a

breach-of-contract claim, without more, cannot be converted into a tort claim," id., the First

Circuit concluded that personal jurisdiction should be analyzed under the "transacting business"

provision of the long arm statute, not the "tortious injury" provision. Having already decided

that the defendant was not subject to personal jurisdiction in Massachusetts for the plaintiff's

breach of contract claim, the First Circuit held that the defendant was likewise not subject to

personal jurisdiction in Massachusetts for the plaintiff's Chapter 93A claim.

As in Lyle Richards, Mr. Kuehn alleges no injury independent of his breach of contract

claim. Instead, he alleges that Dr. Haygood and Ms. Rosenberger violated Chapter 93A by

requesting him to continue to provide services to Delos and the Foundation while they "were

either unwilling or unable to compensate Plaintiff Kuehn for services rendered and expenses

incurred in providing those services." Compl. ¶ 5. As a result, Mr. Kuehn claims no injury apart

from that caused by the alleged breach of contract. Thus, he alleges not a "loss of money or

property" because of a deceptive act, but a recast version of his breach of contract claim.

Accordingly, the defendants are not subject to personal jurisdiction in Massachusetts for Mr.

Kuehn's Chapter 93A claim for the same reasons that they are not subject to personal jurisdiction

for his breach of contract claim.

For these reasons, none of the defendants is subject to personal jurisdiction under the

Massachusetts long arm statute. Therefore, this action should be dismissed.

### B.    Asserting Personal Jurisdiction Over Defendants Offends Due Process.

Not only are the defendants not subject to personal jurisdiction under the Massachusetts

long arm statute, due process also forbids the exercise of personal jurisdiction over them.[1]  For

the exercise of personal jurisdiction to comport with the Due Process Clause of the Fourteenth

Amendment, Mr. Kuehn must establish that the Dr. Haygood, Ms. Rosenberger, and Delos have

---

[1] This Court need not undertake the due process inquiry because it is clear that the defendants are not subject to
personal jurisdiction under the Mass. Gen. Laws ch. 223A, § 3(a). See Ticketmaster-New York, Inc. v. Alioto, 26
F.3d 201, 205 (1st Cir. 1994) (whether the defendants are subject to personal jurisdiction should be decided based on
state law if possible, for "it has long been a basic tenet of the federal courts to eschew the decision of cases on
constitutional grounds unless and until all other available avenues of resolution [have been] exhausted") (quoting
Aggarwal v. Ponce Sch. of Medicine, 745 F.2d 723, 726 (1st Cir. 1984)).

certain minimum contacts with Massachusetts such that the exercise of personal jurisdiction does not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). The minimum contacts test is meant to ensure that a defendant is not "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Mr. Kuehn must thus show that the defendants' conduct constituted a "deliberate engagement in significant activities within Massachusetts, and thus a purposeful availment of the privilege of conducting activities within the Commonwealth." United Elec. Radio & Mach. Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39, 45 (1st Cir. 1993).

Due process is satisfied if this Court has either general or specific jurisdiction over the defendants. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum based contacts, but the defendant nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" Massachusetts Sch. of Law at Andover, 142 F.3d at 34 (quoting United Elec. Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum based activities, such as when the litigation itself is founded directly on those activities." Id.

The defendants are not subject to general jurisdiction in Massachusetts. Delos has no presence in Massachusetts. Delos does not maintain an office or bank account in Massachusetts. It has no employees in Massachusetts. It does not own, rent, or use property in Massachusetts. Delos does not sell or distribute its recordings in Massachusetts. Likewise, Dr. Haygood and Ms. Rosenberger have minimal contacts with Massachusetts. Both have traveled to Massachusetts only a few times. Neither has lived in Massachusetts. Dr. Haygood and Ms.

Rosenberger do not have a bank account in Massachusetts. Nor do they rent or own property in Massachusetts. As such, none of the defendants has "engaged in continuous and systematic activity" in Massachusetts sufficient for the exercise of general jurisdiction. See Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990) (stating that if a defendant's contacts with the forum "do not exist in sufficient abundance ... the inquiry ends").

Likewise, the defendants are not subject to specific jurisdiction in Massachusetts. All of Mr. Kuehn's claims against Dr. Haygood and Ms. Rosenberger except his claim for quantum meruit are based on his breach of contract claim. Negotiations over Mr. Kuehn's consulting agreement occurred at the New York meeting and via the email Mr. Kuehn sent to Delos setting forth his offer concerning compensation. Accordingly, the contract was not formed in Massachusetts. The contract contained no requirement that Mr. Kuehn perform his services in Massachusetts.

Similarly, Dr. Haygood, Ms. Rosenberger, and Delos are not subject to specific jurisdiction for Mr. Kuehn's quantum meruit claim. Indeed, this is Mr. Kuehn's sole claim against Delos. The gist of this claim is that the defendants did not pay him for services he performed in Massachusetts. Their failure to pay occurred in California where they did not send Mr. Kuehn any checks for his services. And, as discussed, the only reason Mr. Kuehn performed services for Delos from Massachusetts is because he, not the defendants, chose to do so.

The defendants' contacts with Massachusetts are thus "random," "fortuitous," and "attenuated" because Dr. Haygood, Ms. Rosenberger, and Delos did not "deliberately engage" in any activities in Massachusetts or "purposefully avail" themselves of the privilege of conducting activities in Massachusetts. See Hanson v. Denckla, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the

requirement of contact with the forum State. The application of that rule will vary with the

quality and nature of the defendant's activity, but it is essential in each case that there be some

act by which the defendant purposefully avails itself of the privilege of conducting activities

within the forum State, thus invoking the benefits and protections of its laws.").

Accordingly, Mr. Kuehn cannot establish that the defendants have sufficient minimum

contacts to satisfy due process.[2] Thus, this case should be dismissed.

## II.    Massachusetts Is An Improper Venue.

Mr. Kuehn's Complaint should either be dismissed or transferred to the Central District

of California because Massachusetts is an improper venue. 28 U.S.C. § 1406(a) states, "The

district court of a district in which is filed a case laying venue in the wrong division or district

shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in

which it could have been brought." 28 U.S.C. § 1391(a)(1) and (a)(2) provide, in relevant part,

that venue is proper in "a judicial district where any defendant resides, if all defendants reside in

the same State" or in "a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred." 28 U.S.C. § 1391(c) states that a corporation "shall be

deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time

the action is commenced."

Mr. Kuehn has the burden of establishing that venue is proper in Massachusetts. See

Transamerica Corp. v. Trans-American Leasing Corp., 670 F. Supp. 1089, 1090 (D. Mass. 1987)

---

[2] Since Mr. Kuehn cannot satisfy "purposeful availment" prong of the tripartite test for determining whether a
defendant is subject to specific jurisdiction, this Court need not assay the "relatedness" and "reasonableness" prongs.
See United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992) ("[W]e
today suggest a tripartite test for the ascertainment of specific jurisdiction. First, the claim underlying the litigation
must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts
must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking
the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's
courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable."); Salisbury
Cove Assocs., Inc. v. Indcon Designs, 211 F. Supp. 2d 184, 191 (D. Me. 2002) ("All three prongs of the tripartite
test must be satisfied for this Court to exercise specific jurisdiction.").

("When an objection to venue has been raised, the burden is on the plaintiff to establish that venue is proper in the judicial district in which the action has been brought."); 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3826 (2d. ed. Supp. 2005) (stating that "'the better view," and the clear weight of authority, is that, when objection has been raised, the burden is on the plaintiff to establish that the district he chose is a proper venue"). As with personal jurisdiction, this is a burden that Mr. Kuehn cannot satisfy.

None of these provisions authorizes venue in Massachusetts. Venue is inappropriate in Massachusetts under 28 U.S.C. § 1391(a)(1) because all three defendants do not reside in Massachusetts. Dr. Haygood and Ms. Rosenberger reside in Santa Monica, California. Delos is incorporated in California and has its principal place of business in Hollywood, California. In addition, Delos does not reside in Massachusetts because, as argued, it is not subject to personal jurisdiction in Massachusetts.

Nor does 28 U.S.C. § 1391(a)(2) authorize venue in Massachusetts because a substantial part of the actions or omissions giving rise to Mr. Kuehn's claims did not occur in Massachusetts. The test for determining venue under 28 U.S.C. § 1391(a)(2) "is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omission giving rise to the claim.'" Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994). In undertaking this inquiry, the First Circuit looks "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001). Even so, "because the general-venue statute protects the defendant, courts often focus on the relevant activities of the defendant, rather than the plaintiff, in determining where a substantial part of the underlying events occurred." Abramoff v. Shake Consulting, LLC, 288 F. Supp. 2d 1, 4 (D.D.C. 2003)

(citing cases); see also Uffner, 244 F.3d at 43 (noting the general purpose of the venue statute "is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial"); 15 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3806 (2d. ed. Supp. 2005) (same).

Here, all of the events giving rise to Mr. Kuehn's claims occurred outside of Massachusetts. The contract was negotiated at the meeting in New York. Mr. Kuehn's proposed compensation offer was accepted by the defendants in California. Dr. Haygood and Ms. Rosenberger stopped sending him checks from California. Thus, the contract was neither formed nor breached in Massachusetts. Likewise, the failure to pay Mr. Kuehn for his services, which grounds his quantum meruit claim, occurred in California. Conversely, there were no substantial events giving rise to Mr. Kuehn's claims that occurred in Massachusetts.

Indeed, none of the defendants' activities took place in Massachusetts. The defendants never visited Mr. Kuehn in Massachusetts. Any emails they sent to him they sent from outside of Massachusetts. All of the checks they sent Mr. Kuehn were sent from California. The defendants met face-to-face with Mr. Kuehn in states other than Massachusetts.

As a result, Massachusetts is an improper venue. See Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1372 (11th Cir. 2003) (venue improper in Alabama where defendant breached contract in Georgia); Cottman, 36 F.3d at 295 (venue improper in Pennsylvania because the claim arose from defendants failure to remit payments from Michigan, not the plaintiff's failure to receive the payments in Pennsylvania); Abramoff, 288 F. Supp. 2d at 11 (venue in Washington D.C. improper where defendant's breach occurred in a different district); Loeb v. Bank of America, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003) (venue improper despite fact that

plaintiff received phone "voluminous" correspondence and phone calls at his home in the district because such events are "woefully insufficient" to establish venue).

The fact that Mr. Kuehn may have suffered economic loss in Massachusetts is irrelevant. Any argument to the contrary proves too much. If a plaintiff's economic harm were sufficient to ground venue under 28 U.S.C. § 1391(a)(2), there would be no reason for 28 U.S.C. § 1391(a)(1) and (2). For venue would always be proper in a plaintiff's home forum based on the harm the plaintiff suffered there. Thus, courts routinely hold that economic loss, without more, does not suffice to establish venue. See, e.g., Cottman, 36 F.3d at 295 (venue improper in Pennsylvania even though plaintiff suffered economic loss in Pennsylvania); Loeb, 254 F. Supp. 2d at 587 (venue improper in district where plaintiff suffered economic harm); Astor Holdings, Inc. v. Roski, 2002 WL 72936, at *8 (S.D.N.Y.) (stating that "if the economic loss that resulted was inflicted on a corporation in Georgia, for example, that alone would not be sufficient for venue in Georgia, else plaintiffs could always sue in their home forum").

The Central District of California, however, is a district in which this action could have been brought. See 28 U.S.C. § 1406(a). Dr. Haygood and Ms. Rosenberger reside in Santa Monica, California, which is in the Central District of California. Likewise, Delos is incorporated and has its principal place of business in Hollywood, California, which is also in the Central District of California. Thus, all defendants are subject to personal jurisdiction in California and venue is proper in the Central District of California under 28 U.S.C. § 1391(a)(1).

In addition, even if venue in Massachusetts is proper as to one or two of the defendants, it is not proper as to all defendants. And all the defendants are necessary parties to this action. See Fed. R. Civ. P. 19(b). Moreover, the alternative is to have simultaneous litigation in courts located in opposite sides of the country. As a result, it is "in the interest of justice" to transfer

this case to the Central District of California. 28 U.S.C. § 1406(a); see generally, 15 Charles

Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3807 (2d. ed. Supp. 2005) (noting

that "if there is some other district in which venue would be proper for all parties and all

defendants would be subject to service, the suit can be transferred there" and citing cases).

Therefore, Massachusetts is an improper venue and this case should be dismissed or

transferred to the Central District of California.

## CONCLUSION

For the reasons stated, this Court should dismiss this action for lack of personal

jurisdiction. If this Court determines that the defendants are subject to personal jurisdiction, it

should dismiss this action for improper venue or, in the alternative, transfer this action to the

Central District of California.

Respectfully submitted,

**AMELIA STONE HAYGOOD**

**CAROL ROSENBERGER**

**DELOS INTERNATIONAL, INC.**

By their attorneys,

/s/ John E. Duke _____
Jonathan A. Keselenko
BBO #559604
John. E. Duke
BBO #658755
FOLEY HOAG LLP
155 Seaport Blvd.
Boston, MA 02210-2600
(617) 832-1000

Dated: May 13, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID KUEHN,

               Plaintiff,

     v.

DR. AMELIA HAYGOOD, CAROL
ROSENBERGER, AND DELOS
INTERNATIONAL, INC.,

               Defendants.

CIVIL ACTION No. 05-10574 (RGS)

## AFFIDAVIT OF CAROL ROSENBERGER

1.      My name is Carol Rosenberger.  I am currently the Senior Vice President, Artists and Repertoire, for Delos International, Inc. ("Delos").  Delos is an independent classical music recording company.

2.      Delos was incorporated in California in 1973 under the laws of California.  Delos has only one office, which is located in Hollywood, California.

3.      I reside in Santa Monica, California.

4.      I have never lived in Massachusetts.

5.      I have traveled to Massachusetts only a few times.

6.      Neither Delos nor I have any bank accounts in Massachusetts.

7.      Neither Delos nor I own or rent any property in Massachusetts.

8.      Delos has no employees in Massachusetts.

9.      Delos does not sell or distribute its recordings in Massachusetts.  Instead, Delos sells its recordings to the central offices of various retail stores or to one-stop distributors who then sell or distribute Delos recordings in Massachusetts.  None of these central offices or

distributors is in Massachusetts. Delos's sales to Tower Records and Virgin, for instance, are

handled through Tower Records' and Virgin's main California offices. All invoices to, and

payments from, Tower Records and Virgin are also handled from these California offices.

Likewise, Delos sells its recordings to Alliance, a one-stop distributor in Florida, who then sells

the recordings to national retail chains such as Barnes & Noble.

10.     On July 26, 2000, Amelia Stone Haygood and I met David Kuehn in New York

City. Mr. Kuehn had formerly worked for BMG Classics, another classical music recording

company, in New York City. At this meeting, we discussed the possibility of Mr. Kuehn

working with Delos as a consultant to develop new marketing and alternative marketing projects.

We also discussed the possibility of Mr. Kuehn performing similar work for the Moscow

Chamber Orchestra Cultural Exchange Foundation ("Foundation"), a non-profit corporation

based in California. Mr. Kuehn informed us that he had moved to Massachusetts since leaving

BMG and was no longer living in New York. However, to allay Delos's concern in having a

consultant working from Massachusetts, Mr. Kuehn assured us that he traveled to New York

frequently and had many New York contacts. Dr. Haygood and I told Mr. Kuehn that Delos did

not have enough money to pay him, but offered to pay him personally until Mr. Kuehn's

marketing projects could develop sufficient revenue to enable Delos to pay him or Delos

received an anticipated cash infusion. Mr. Kuehn agreed.

11.     On December 26, 2000, Mr. Kuehn sent Delos an email outlining his desired

compensation terms. Delos agreed.

12.     Mr. Kuehn's work for Delos involved providing promotional copies of new Delos

releases to classical music radio stations located in states such as Vermont, Virginia, and

California. Mr. Kuehn, however, did not provide these recordings to the radio stations himself.

Rather, he would contact Delos. Delos would then provide the recording directly to the radio stations.

13.    Mr. Kuehn's work for Delos also involved providing press releases and recordings to various music publications such as Classical CD Review in Maryland; Schwann in Virginia; Opera News in New York; and the San Francisco Examiner in California.

14.    Mr. Kuehn's work included forwarding various internet links and online articles, such as reviews, to Delos's office.

15.    Although Mr. Kuehn performed some of his work for Delos from his home in Massachusetts, Delos provided Mr. Kuehn with a toll free number so that he could make long distance calls as though he were at the Delos office in California. In addition, Delos provided Mr. Kuehn with a Delos extension so that incoming callers could call Delos's office in California and be transferred to his extension or could call his extension directly.

16.    Mr. Kuehn communicated with Delos by telephone and email when he was in Massachusetts.

17.    I have not visited Mr. Kuehn in Massachusetts. All of my face-to-face contact with Mr. Kuehn has been outside of Massachusetts, primarily in California.

18.    While Mr. Kuehn served as a consultant for Delos, no Delos employees visited Mr. Kuehn in Massachusetts. Instead, Mr. Kuehn would either meet with Delos employees in California or some other state. For example:

      a.    On January 10, 2001 through January 13, 2001, Mr. Kuehn met with Dr. Haygood and me in New York to discuss new marketing and alternative marketing strategies.

b.  On February 12, 2001 through February 14, 2001, Mr. Kuehn met with Dr. Haygood and me at a classical music radio convention in Arizona where Mr. Kuehn was to renew his radio contacts.

c.  On May 2, 2001, Mr. Kuehn attended a meeting in Texas with representatives from the Dallas Symphony Orchestra, a Delos recording artist.

d.  On May 3, 2001 through May 7, 2000, Mr. Kuehn attended meetings at Delos's office to discuss new marketing and alternative marketing strategies for Delos and development strategies for the Foundation.

e.  On September 28, 2001, Mr. Kuehn attended a concert in New York at Carnegie Hall by the Moscow Chamber Orchestra, a Delos recording artist, and attended various meetings and a CD signing surrounding the event.

f.  On October 13, 2001, Mr. Kuehn attended a Foundation fundraiser in Santa Barbara, California.

g.  On November 16, 2001, Mr. Kuehn attended a Delos staff meeting at Delos's office.

h.  On January 20, 2002 through January 25, 2002, Mr. Kuehn Delos meetings in Southern France.

i.  On February 13, 2002 through February 18, 2002, Mr. Kuehn a radio conference in San Diego, California with Dr. Haygood, who was a speaker at the conference.

j.  On May 8, 2002 through May 13, 2002, Mr. Kuehn met with Dr. Haygood and me in New York.

k.  On August 3, 2002 through August 8, 2002, Mr. Kuehn attended the Mostly Mozart Festival in New York, where Constantine Orbelian, the conductor of the Moscow Chamber Orchestra, was performing with the Orchestra.

l.  On September 18, 2002, Mr. Kuehn met with Delos employees at Delos's office.

19.     Mr. Kuehn provided no services to Delos targeted towards Massachusetts.

20.     From February 3, 2001 until October 28, 2001, Mr. Kuehn was paid by checks mailed to him in Massachusetts from either Dr. Haygood or me in California, or from the Foundation in California.

21.     Mr. Kuehn's new marketing and alternative marketing projects failed to generate revenue for Delos or development activity for the Foundation.

22.     The awaited cash infusion never arrived.

23.     After October 28, 2001, Dr. Haygood, the Foundation, and I stopped paying Mr. Kuehn for his consulting services because financial resources had been exhausted.


Signed under the Pains and Penalties of Perjury this 12th day of May, 2005.


/s/ Carol Rosenberger
Carol Rosenberger

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID KUEHN,

Plaintiff,

v.

DR. AMELIA HAYGOOD, CAROL
ROSENBERGER, AND DELOS
INTERNATIONAL, INC.,

Defendants.

CIVIL ACTION No. 05-10574 (RGS)

## AFFIDAVIT OF AMELIA STONE HAYGOOD

1.  My name is Amelia Stone Haygood. I am the founder and President of Delos

International, Inc. Delos is an independent classical music recording company.

2.  I reside in Santa Monica, California.

3.  I have never lived in Massachusetts.

4.  I have traveled to Massachusetts only a few times.

5.  I do not have a bank account in Massachusetts.

6.  I neither own nor rent property in Massachusetts.

7.  I have never met with David Kuehn in Massachusetts. All of my face-to-face

contact with Mr. Kuehn has been outside of Massachusetts, primarily in California.

8.  All of my other communications with Mr. Kuehn have been by email or

telephone.

Signed under the Pains and Penalties of Perjury this 12th day of May, 2005.

/s/ Amelia Stone Haygood
Amelia Stone Haygood