UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID KUEHEN, )<br><br>Plaintiff )<br><br>v. )<br><br>DR. AMELIA HAYGOOD,<br>CAROL ROSENBERGER,<br>AND DELOS INTERNATIONAL, INC. )<br><br>Defendants. ) | CIVIL ACTION NO: 05-10574(RGS) |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER VENUE

### Introduction

The Defendants, Dr. Amelia Haygood, Ms. Carol Rosenberger, and Delos

International, Inc. ("Delos"), all of whom are non-residents, solicited a business relationship

with the Plaintiff, David Kuehn, a Massachusetts resident, to promote classical recordings

produced by Delos and to promote the efforts of a non-profit organization that apparently was

never incorporated.  The Defendants knew that Mr. Kuehn intended to perform the contract

from Massachusetts and knew that Mr. Kuehn did, in fact, perform the contract from

Massachusetts. The Defendants also were aware that Mr. Kuehn's efforts on their behalf

included promotional contacts with Massachusetts classical music stations and the Boston

Globe. Delos maintains a web-site from which Massachusetts residents can purchase its

recordings and advertised in magazines that circulate in Massachusetts. From December of 2000 through October 2002, Dr. Haygood, Ms. Rosenberger, and Delos employees maintained extensive telephone, e-mail, and other contacts with Mr. Kuehn in Massachusetts. Now, having engaged in business in Massachusetts, and having breached their contract with Mr. Kuehn, the Defendants seek to avoid answering for the consequences of their actions in Massachusetts. Mr. Kuehn has demonstrated that the Defendants are subject to personal jurisdiction in Massachusetts and that venue is proper in Massachusetts. Therefore, the Defendants' Motion To Dismiss Or Transfer Venue must be denied.

## Facts

The Defendants do not accurately describe the formation of the contract that existed between the parties. According to the Defendants, the contract was first discussed at a meeting between Ms. Rosenberger, Dr. Haygood, and Mr. Kuehn in New York on July 26, 2000. Rosenberger Affidavit, ¶10. While Mr. Kuehn did meet with Dr. Haygood and Ms. Rosenberger in New York in July of 2000, and he did discuss his plan to establish a consulting business in Massachusetts, Mr. Kuehn told Dr. Haygood and Ms. Rosenberger that he was not interested in working with them at that time. Kuehn Affidavit, ¶3. Six months later, Ms. Rosenberger and Dr. Haygood, with full knowledge that the Mr. Kuehn had established his consulting business in Massachusetts, called Mr. Kuehn in Massachusetts to solicit his services. Complaint, ¶11. Kuehn Affidavit, ¶4.

Mr. Kuehn agreed to provide one full day of services per week at a monthly rate of $1500.00 and, on December 26, 2000, sent the Defendants an e-mail that set forth his compensation. Complaint, ¶12, Kuehn Affidavit, ¶5. The Defendants agreed to his terms.

Complaint, ¶11, Rosenberger Affidavit,  ¶11. In February of 2001, Dr. Haygood and Ms. Rosenberger requested that Mr. Kuehn provide addition services. Kuehn Affidavit, ¶6. Mr. Kuehn agreed to provide additional services at an increased rate of compensation. Kuehn Affidavit, ¶6. On March 1, 2001, the Plaintiff sent an e-mail to Ms. Rosenberger confirming his understanding that the Defendants would budget $3,000.00 per month for his services and that an outstanding balance on his retainer would be paid. Kuehn Affidavit, ¶6. On March 2, 2001, Ms. Rosenberger replied by e-mail "Yes, the retainer is understood as you spelled it out". Kuehn Affidavit, ¶7. Thus, the Defendants' assertion that there were no funds to pay him is contradicted by e-mail communications from Ms. Rosenberger (*Id.*) as well by the fact that the Defendants admit that they agreed to pay Mr. Kuehn (Rosenberger Affidavit, ¶11) and did pay Mr. Kuehn. Rosenberger Affidavit, ¶20.

The Defendants also mischaracterize the services provided by Mr. Kuehn and the extent of their contacts within the Commonwealth of Massachusetts. Although the Defendants are correct in stating that Mr. Kuehn traveled extensively on their behalf (Rosenberger Affidavit, ¶18), the majority of the services provided by Mr. Kuehn were provided from Massachusetts. Complaint, ¶13. Kuehn Affidavit, ¶8.  From December of 2000 to October of 2002, there were numerous telephone and e-mail and other communications from Ms. Rosenberger, Dr. Haygood, and Delos employees to Mr. Kuehn in Massachusetts. Complaint, ¶14, Kuehn Affidavit, ¶9.  Delos' agreement to pay for a toll-free number for Mr. Kuehn (Rosenberger Affidavit, ¶15) resulted in an additional contact with Massachusetts due to the Defendants' choice of a Massachusetts business as its long distance telephone service provider. Kuehn Affidavit, ¶10.  Delos has additional contacts with Massachusetts by virtue of its operation of a

web-site from which Massachusetts residents can purchase Delos recordings and by advertising in national and international magazines with circulation in Massachusetts. Kuehn Affidavit, ¶¶ 11,14.

The assertion that "Mr. Kuehn provided no services to Delos targeted to Massachusetts" (Rosenberger Affidavit, ¶19) is also not accurate. Ms. Rosenberger describes Mr. Kuehn's efforts to promote Delos releases to classical music stations in Vermont, Virginia, and California. Rosenberger Affidavit, ¶12. However, Ms. Rosenberger neglects to mention that Mr. Kuehn directed those efforts to classical music stations in Massachusetts, such as WGBH and WCRB and that in connection with these efforts Delos shipped promotional copies of Delos recording to radio stations in Massachusetts. Kuehn Affidavit, ¶12. Similarly, although Ms. Rosenberger acknowledges that Mr. Kuehn's work for Delos involved sending press releases to various publications (Rosenberger Affidavit, ¶13), she neglects to mention that Mr. Kuehn also sent press releases to the Boston Globe. Kuehn Affidavit, ¶13. On February 15, 2001, after Mr. Kuehn sent a press release to the Boston Globe promoting a Delos recording by Contralto Ewa Podle, and arranged to have a promotional copy of the recording sent to the Boston Globe, the Boston Globe published a review of the recording. Kuehn Affidavit, ¶13.

## ARGUMENT

The Defendants' contention that they are entitled to dismissal because they are not subject to personal jurisdiction in Massachusetts and because Massachusetts is an improper venue is neither supported by the facts or the law. As is discussed more fully herein, the

Plaintiff has proffered sufficient facts to support a finding that the Defendants are subject to personal jurisdiction in Massachusetts and that venue is appropriate in Massachusetts.

**I.     The Defendants Are Subject To Personal Jurisdiction In Massachusetts.**

Mr. Kuehn has more than met his burden of proving facts sufficient to support an exercise of personal jurisdiction. *See Massachusetts School of Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 34 (1st Cir. 1998) (citations omitted) (stating"[i]n conducting the requisite analysis under the prima facie standard, we take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim. We then add to the mix facts put forward by the defendant to the extent that they are uncontradicted."). The determination of whether a court has jurisdiction over a non-resident defendant "presents a two-fold inquiry: (1) whether the plaintiff has demonstrated that the assertion of jurisdiction is authorized by statute, and, if authorized, whether such assertion is consistent with basic due process requirements". *Back Bay Farm LLC v. Collucio*, 230 F.Supp 2d 176, 180 (D.Mass. 2002). The Defendants' contacts with the Commonwealth of Massachusetts support the conclusion that jurisdiction over the Defendants is authorized by the Massachusetts Long Arm Statute and that the assertion of jurisdiction over the Defendants is consistent with due process.

**A.     Jurisdiction Over The Defendants Is Authorized By Massachusetts Law.**

The Defendants are subject to personal jurisdiction in the Commonwealth of Massachusetts pursuant to Mass. Gen. L. ch. 223A §3, which states in pertinent part that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent as to a cause of action in law or equity from the person's (a) transacting any business in the

commonwealth". In determining the amenability to suit of a nonresident, the law of the forum

applies. *Hahn v. Vermont Law School*, 698 F.2d 48, 49 (1st Cir.) Further, the First Circuit has

stated that "[t]he 'arising from clause in chapter 223A is to be generously construed in favor of

asserting personal jurisdiction, by applying the following 'but for' causation test: Did the

defendant's contacts with the Commonwealth constitute 'the first step in a train of events that

result[ed] in the personal injury". *Lyle Richards International Limited v. Ashworth, Inc.*, 132

F.3d 111, 114 (1st Cir. 1997), *citing Tatro v. Manor Care, Inc.*, 416 Mass. 763 (1994).

    An application of the "but for" test to the instant case compels the conclusion that the

Defendants' contacts with Mr. Kuehn in Massachusetts were the precipitating event leading to

the contract between the parties. While, as the Defendants assert, there was no requirement

that Mr. Kuehn perform services in Massachusetts, the Defendants knew full well that Mr.

Kuehn had established his consulting business in Massachusetts and that if they wanted his

services, they would have to do business with Mr. Kuehn in Massachusetts. Knowing that,

they chose to initiate contact with Mr. Kuehn in Massachusetts in order to retain his services.

This contact is significant for jurisdictional purposes. *See Tatro, surpa* at 551-552 (stating that

"generally the purposeful and successful solicitation of business from residents of the

Commonwealth by a defendant or its agent will satisfy this requirement").

    However, the successful solicitation of business from Mr. Kuehn is not the sole basis

for concluding that the Defendants had transacted business in the Commonwealth. It is

significant for jurisdictional purpose that the Defendants maintained regular and on-going

contact with Mr. Kuehn in Massachusetts. *See Good Hope Industries v. Ryder Scott Company*,

378 Mass. 1, 6 (1979) (jurisdiction found based upon the non-resident defendant sending

technical reports to Massachusetts plaintiff which were extensively discussed by the parties as well as exchange of checks and invoices, even though services were provided and alleged breach occurred in Texas). It is also significant that the Defendants knew that Mr. Kuehn was based in Massachusetts and would provide the majority of his services from his home in Massachusetts. *See Good Hope Industries*, *supra* at 12 (stating "[h]ad the defendant not desired to expose itself to a claim of Massachusetts jurisdiction, it was within its power to refuse to deal with the plaintiffs here".) (citations omitted). Mr. Kuehn undertook efforts to promote the Defendants recordings' in Massachusetts through contacts with local media. The Defendants participated in Massachusetts based promotional activities by shipping Delos recordings from California to Massachusetts radio stations and to the Boston Globe. Delos operates a web-site from which Massachusetts residents can order its recordings and has advertised in magazines that circulate in Massachusetts and arranged to have recordings shipped to Massachusetts for sale.

The fact that the Defendants initiated contact with Mr. Kuehn in Massachusetts, the extent of the Defendants' contacts with Massachusetts, and the fact that the contract was performed in Massachusetts distinguish the instant case from the cases upon which the Defendants rely. In *Telco Communications, Inc. v. New Jersey Firemen's Mutual Benevolent Association*, the Massachusetts-based plaintiff initiated the contact with the New Jersey-based defendant to provide services in New Jersey and there were limited communications between the parties. 41 Mass.App.Ct. 225, 229-231 (1986). Similarly, in *Lyle Richards International v. Ashworth, Inc.*, the plaintiff made an unsolicited offer to the defendant and the parties' agreement did not indicate that the plaintiff either "needed to or intended to perform its ...

responsibilities in Massachusetts". 132 F.2d 111, 112-114 (1st Cir. 1997). *Nichols Associates,*

*Inc. v. S. Leger Starr*, turns on similar facts: the Massachusetts plaintiff approached the non-

resident defendant in Connecticut where most of the contract was performed. 4 Mass.App.Ct.

91, 94-95.   Unlike the instant case, there was nothing to suggest "that it was even in the

contemplation of the parties that the plaintiff would perform any portion of the work in

Massachusetts. *Id*. at 96. In *Automatic Sprinkler Corp. of America v. Seneca Food Corp.*, the

defendant's Massachusetts contacts were limited to affirming a purchase order and making

payments by the mail. 361 Mass. 441, 444-445 (1972).

In the First Circuit, personal jurisdiction has been predicated upon far more limited

contacts with the Commonwealth than were undertaken by the Defendants. In *Hahn v. Vermont*

*Law School*, *supra*, the Court found that "[t]purposeful actions of VLS [the defendant law

school] in mailing to Hahn in Massachusetts application information and an acceptance letter

were sufficient, *without more*, to constitute transaction business under the broadly construed

Massachusetts long-arm statute". 698 F.2d 51 (emphasis supplied). The Court made this

finding notwithstanding the fact that the plaintiff had initiated the contract and that the services

were provided and the alleged breach took place in Vermont. *Id*. at 50-51. In *Back Bay Farm*

*LLC v .Collucio*, *supra*, the conclusion that defendant transacted business in Massachusetts was

supported by three reasons. First, as in the instant case,  a telephone call from the defendant to

the plaintiff was found to have begun the "train of events" that resulted in the alleged Chapter

93A violation even though the alleged misrepresentation that was the basis of the alleged

violation happened in Virginia. *Id*. at 185. Second, as in the instant case, the defendant had

successfully solicited business from the plaintiff and advertised to Massachusetts "via a world

wide web page describing 'sales …in the United States' and in a magazine. *Id.* Third, the

Magistrate relied on facts that were described as unique, but which have analogs in the instant

case. These include the fact that the plaintiff traveled from Massachusetts to Virginia after

receiving a call from defendant's agent and that the defendant had several additional contacts

with the plaintiff. *Id.* at 186. In the instant case,  as the Defendants acknowledge, Mr. Kuehn

traveled from Massachusetts to meet with them after being contacted by the Defendants. More

importantly, the Defendants maintained a substantial relationship with Mr. Kuehn in

Massachusetts that lasted from December 2000 to October 2002.

Because the Defendants have transacted business in Massachusetts, jurisdiction is

appropriate under the Massachusetts Long Arm Statute.

**B.  Jurisdiction Over The Defendants Is Consistent With Due Process Requirements.**

Having presented facts that establish jurisdiction over the Defendants, Mr. Kuehn is

required to demonstrate that the Defendants' "contacts with the forum make it reasonable and

not unfair to require it to defend against a suit there". *Hahn*, *supra*, at 51. In making this

assessment, "less is required to support jurisdiction when the cause of action arises from the

defendant's contacts with the forum … than when it does not". *Id.*  In the First Circuit, courts

have "characterized compliance with the Constitution as implicating 'three distinct components,

namely relatedness, purposeful availment (sometimes called minimum contacts), and

reasonableness". *Massachusetts School of Law*, *supra* at 35 (citations omitted). While the

analysis of the constitutional issue is not identical to the state law issue, the facts presented by

Mr. Kuehn satisfy all of these components. *See Good Hope Industries*, *supra*, at 6 (noting that

"[s]ince we have stated that our long arm statute … functions as 'an assertion of jurisdiction

over the person to the limits allowed by the Constitution of the United States', the two questions tend to converge")(citations omitted).

The Defendants' lack of physical contact with the Commonwealth of Massachusetts matters less than they assert. The Supreme Court has emphasized "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' subject to regulation and sanctions in the other state for the consequences of their activities". *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Moreover, as in the instant case, "where individuals derive benefit from their interstate activities …, it may well be unfair to allow them to escape having to account in other states for the consequences that arise proximately from such activities; the Due Process Clause may not be wielded as a territorial shield to avoid interstate obligations that they have voluntarily assumed". *Id*. at 473-474.

Assessing whether Mr. Kuehn's claim is sufficiently related to the Defendants Massachusetts contacts "demands something like a 'proximate cause' nexus". *Cambridge Literary Properties, Ltd v. W. Goebel Porsellanfabrik G.m.b.H & Co Kg, et al*, 295 F. 3d 59, 65 (1st Cir. 2002) (citations omitted). A proximate cause nexus exists in the instant case. The Defendants' Massachusetts activities were not simply isolated occurrences but "instrumental to the formation of the contract" that is the subject of the litigation and served a larger strategy to serve the market for classical music recordings in Massachusetts. *See Hahn v. Vermont Law School, supra* at 51-52.

To satisfy the voluntary availment or minimum contacts component demands a plaintiff demonstrate "that a defendant's 'conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there". *United Electrical, Radio and*

*Machine Workers of America et al. v. 163 Pleasant Street Corporation et al.*, 960 F.2d 1080, 1088 (1st Cir. 1992)(*citing World-W*ide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980). Mr. Kuehn has demonstrated that that the Defendants voluntarily in light of the extensive and continuing contacts with Mr. Kuehn and contacts with other Massachusetts residents, constitutes a purposeful availment of the privilege of doing business in Massachusetts. *Burger King Corp. v. Rudzewicz*, *supra*, at 475-476 (stating that "where the defendant 'deliberately' engaged in significant activities within a state, or *has created continuing obligations between himself and the residents of the forum,* he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forums laws, it is presumptively not unreasonable to require him to submit the burdens of litigation in that forum as well")(citations omitted). *See also Daynard v. Ness, Motely, Loadholt, Ricahrdson & Pool, P.A.*, 290 F.3d 42, 56 (1st Cir. 2002) (noting that "[e]ven in cases where the defendant was not physically present in the forum, where the defendant initiated the transaction by mailing or calling the plaintiff in the forum and when the defendant contemplated that the plaintiff would render services in the forum ... many courts have found jurisdiction".) (citations omitted). The Defendants' extensive and persistent activities in Massachusetts satisfy the "purposeful availment" component and make the Defendants' presence in a Massachusetts Court "foreseeable" rather than "random, isolated, or fortuitous". *Back Bay Farm*, *supra* at 186-187.

The assertion of jurisdiction is reasonable under standards employed by the First Circuit. First Circuit Courts have identified five factors to be weighed in assessing reasonableness. These are:

> (1) the burden on the defendant in appearing; (2) the interest of the forum state in adjudicating the dispute; (3) the interest of the plaintiff in obtaining convenient and effective relief; (4) the interest of the judicial system in obtaining the most effective resolutions of the controversy; and (5) the interest common to all sovereigns in promoting substantive social policies.

*Back Bay Farm*, *supra* at 187 (citations omitted). As to the first factor, although there may be some burden on the Defendants to litigate this matter in Massachusetts rather than in California, the Defendants have not demonstrated "any special or unusual hardship". *Id*. Nor, given the international nature of the Defendants' business and the extensive travel described by the Defendants, would it appear likely that the Defendants could make such a showing. As to the second factor, Massachusetts has an interest in enforcing its laws regarding contracts and unfair trade practices. *See Tatro, supra* at 551 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985) for the proposition that "[a] state generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of state actors"). As to the third factor, the convenience of Mr. Kuehn weighs in favor of Massachusetts. As in *Back Bay Farm*, "[t]he fourth and fifth factors add little to the mix: the judicial systems' interest in obtaining the most efficient resolution of a case such as this is generally considered 'a wash' and the interests of competing social policies has little impact here". *Id*. (citations omitted).

Because the Defendants chose to do business in Massachusetts, their presence in a Massachusetts court is consistent with due process.

## II.    Venue Is Proper In Massachusetts.

Venue is proper against all Defendants pursuant to 28 U.S.C. 1391(a)(2) since this district is "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred". Although the "cases construing subsection two are spare, the First Circuit decision in *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001) identified the principles which inform the analysis". *Rooney v. Disney World Co. et al*, 2003 U.S. Dist. Lexis 22226, 16 (D. Mass. 2003). In determining whether venue is proper, courts look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim". *Uffner*, *supra*, at 42. The test is the same whether the claim sounds in contract or tort. *Id*. at 41. Contrary to the Defendants' argument, "[i]n this circuit, a court must not confine its inquiry to the acts of the defendant, but instead must employ a more 'holistic' view of the problem". *Id*. at 42, n.6. Moreover, "an event need not be in dispute between the parties in order to constitute a substantial event giving rise to the claim". *Id.* at 43. "Using this standard, venue may well exist in several different jurisdictions where a substantial part of the events giving rise to the claim took place". *Raymarine, Inc. v. Argonaut Computer, Inc.* 2002 Lexis 14301, 23, (D. N.H. 2002) (*citing Uffner* at 41).

Under the standard applied in the First Circuit, a substantial part of the events or omissions giving rise to the claim took place in Massachusetts, thereby establishing that venue is proper in this Court. These include the facts that negotiations that led to the formation of the contract took place in Massachusetts, as well as the revision of the agreement and the subsequent negotiations regarding payment of Mr. Kuehn's compensation and expenses. In addition, Mr. Kuehn substantially performed the contract in Massachusetts. Courts in the First Circuit have found venue proper in similar circumstances. *Scansoft, Inc. v. Smart*, 2003 U.S. District 23636 at 7 (D. Mass. 2003) (venue proper where California defendant negotiated agreement from California with Massachusetts plaintiffs, agreement was performed in

13

Massachusetts, and dispute concerned terms of agreement negotiated). In so doing, several courts have noted the similarity between the venue analysis and the jurisdictional analysis. *Raymarine, supra* at 24, *Rooney*, *supra* at 17,  *Robinson Manufacturing Company v. Bank of America*, 2002 U.S. Dist. LEXIS 10816, 29 (D. Me. 2002).

Once venue is established as proper, a court considering transfer of venue should consider the following factors: (1) the convenience of the parties and witnesses; (2) the relative ease of access to documents to be introduced as evidence, (3) the cost of procuring willing witnesses, and any practical problems  associated with trying the case. *Raymarine*, *supra* at 25 (citations omitted). It has been noted in this Circuit that "[t]he Supreme Court has held that 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed'". *Buckley v. McGraw-Hill, Inc.*, 762 F. Supp. 439 (D.N.H. 1991) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508) (1947). The Defendants cannot meet this standard. The parties to the agreement are Mr. Kuehn, Dr. Haygood, and Ms. Rosenberger. As is evident from Ms. Rosenberger's affidavit, Dr. Haygood and Ms. Rosenberger travel extensively. Travel to Massachusetts imposes not burden upon them. The documents related to the contract either already exist in Massachusetts or are easily transported to Massachusetts. As noted by the Court in *Scansoft*, "while it may be more inconvenient for Smart [the California defendant] to litigate in Massachusetts, this is not the type of 'oppressiveness and vexation' disproportionate to Scansoft's [the Massachusetts plaintiff] convenience of litigating in this district".

## CONCLUSION

For the reasons set forth above, this Court should dismiss this action nor transfer venue to any other District.

Respectfully Submitted,
DAVID KUEHN, Plaintiff
By his attorney,


/s/ Eugene R. Curry
Eugene R. Curry (BBO #549239)
3010 Main Street
Barnstable, Massachusetts 02630
(508) 375-0070

DATED: May 31, 2005